COMPILED

OF GUAM
2012 NOV 28 PM 4: 36

## IN THE SUPERIOR COURT OF GUAM

ANGELITO YALUNG TOLENTINO, )  DOMESTIC CASE NO. DM0708-12
                            )
            Plaintiff,      )
                            )  **DECISION AND ORDER**
        v.                  )
                            )
ROSEMARIE GONZALES TOLENTINO, )
                            )
            Defendant.      )
_____)

### INTRODUCTION

This matter came before the HONORABLE ARTHUR R. BARCINAS on the 7th day of November, 2012, upon review after assignment. Jon A. Visosky, Esq., represents the Plaintiff, and the Defendant has not yet been served nor made an appearance. The Court now issues the following Decision and Order on the matter.

### DISCUSSION

The issue of personal jurisdiction arises in this case because the Plaintiff has "moved" for an order of the Court allowing service upon the Defendant through publication and mailing by submitting a " Verified Application for Service by Publication and Mail (GRCP Rule 4(o))," and a proposed "Order Re: Application for Service by Publication and Mail (GRCP Rule 4(o))."

**A)  Failure to File a Motion in Compliance with the Local Rules of the Superior Court of Guam**

Pursuant to Rule 7(b)(1) of the Guam Rules of Civil Procedure, "[a]n application to the court for an order shall be by motion . . . ." GRCP Rule 7(b)(1)(2012). CVR 7.1(b) requires

that motions must be made in writing, and must follow a particular form, "[e]very motion shall be presented in writing," and "the moving party must present a motion, which will contain the date on which the motion will be heard, as provided for in CVR Rule 7.1(e)(2)."

Pursuant to Rule 7.1(a) of the Local Rules of the Superior Court of Guam, "the provisions of this rule shall apply to motions, applications, petitions, orders to show cause, and all other proceedings except a trial on the merits and applications for a temporary restraining order . . . ." CVR 7.1(a)(2012)(emphasis added). Therefore, any application or motion requesting that the Court take action must follow the format prescribed by CVR Rule 7.1.

Pursuant to CVR 7.1(e)(2):

> Counsel for the parties must file an "Agreement of Hearing Date," in a form shown below in Attachment "CVR 7.1A." It shall be the responsibility of the moving party or his attorney to contact the attorney for each party who has entered an appearance, or if the party(ies) are pro se, it is the moving party's responsibility to contact the pro se party and propose a date for oral argument. Once the parties have agreed on a date for oral argument, the moving party shall clear the date with the chambers clerk. When the date has been cleared with the clerk, that date shall be inserted in the "Agreement of Hearing Date." If the parties do not agree on a date for oral argument or *if a party has not entered an appearance, the moving party may submit the "Agreement of Hearing Date" to the Court with a notation that the non-moving party does not agree or is not available*, in which event the Court shall either determine the hearing date or determine that no oral argument shall be scheduled and the motion shall proceed to briefing and disposition under CVR 7.1(e)(4), in the Court's discretion.

Local Rules of the Superior Court of Guam, CVR Rule 7.1 (e)(2) (2012)(emphasis added).

Thus, even if no other party has yet appeared in the action, the Plaintiff must still submit a written motion accompanied by an "Agreement of Hearing Date Form." In addition, pursuant to CVR 7.1(c), "[t]here *shall be* served and filed with the motion: (1) *a memorandum in support thereof containing the points and authorities upon which the moving parties relies, including citations* . . . ." CVR Rule 7.1(c)(2012)(emphases added). No Agreement of Hearing Date form and no Memorandum of Points and Authorities were included with the Plaintiff's "application."

Under CVR Rule 7.1(f), "Papers not timely filed by a party including any memoranda or other papers required to be filed under this Rule shall not be considered without leave of court."

Under CVR 7.1(k), "The Court need not consider motions, oppositions to motions or briefs or memoranda that do not comply with this Rule," and "the failure to comply fully with this Rule subjects the offender at the discretion of the Court to the sanctions of General Rule 2.1." CVR 7.1(k)(2012).

> Under GR 2.1:
> The violation of or failure to conform to any of these General Rules, the Guam Rules of Civil Procedure, or the Local Rules of the Superior Court of Guam – Civil Rules shall subject the offending party or counsel to such penalties, including monetary sanctions and/or the imposition of costs and attorney's fees to opposing counsel, as the Court may deem appropriate under the circumstances.

Local Rules of the Superior Court of Guam GR 2.1 (2012).

Under CVR Rule 7.1(k), the Court need not consider the Plaintiff's application, as it does not comply with CVR 7.1.

Because the Court finds that any application for an order must be made by motion which fully complies with the Guam Rules of Civil Procedure and the Local Rules of the Superior Court of Guam, the Court finds that the Plaintiff's application for an order for publication and mailing does not comply and may therefore, be STRICKEN.

**B)  Personal Jurisdiction and Service**

The Plaintiff's application is deficient in other, more substantial respects. Rule 4(e) of the Guam Rules of Civil Procedure requires that if a person against whom an action is filed is a resident of Guam or any other jurisdiction of the United States, they must be served either: (1) under the laws of Guam; (2) "as prescribed by the law of the place where the person is served;" or (3) in person, or at his residence by leaving it with a household member of suitable age, or by serving the person's agent. GRCP Rule 4(e)(2012). Substituted service by statute, 7 GCA § 14106, under Rule 4(o) is permitted through operation of Rule 4(e)(1). However, if the Defendant is not a resident of Guam or any jurisdiction of the United States, and is instead a resident of a foreign country, then service must be made under GRCP Rule 4(f), and may no longer be made "in any manner prescribed or authorized by the laws of Guam," as permitted under GRCP Rule 4(e)(1), but instead must be made only in conformity with GRCP Rule 4(f),

in order to abide by the laws of the sovereign nation in which service will be made. Personal service under Rule 4 must be made within 180 days of the filing, but may be extended by the Court for good cause. GRCP Rule 4(m)(2012).

In this case, the Order Re: Application for Service by Publication and Mail was unsupported and therefore, invalid, on two bases: 1) the declaration and verified complaint in this case establish the residency of the Defendant in a foreign country, the Republic of the Philippines, and therefore, substituted service under 7 GCA § 14106 through Rule 4(o) is inapplicable; and 2) even if substituted service under 7 GCA 14106 were applicable, the verified application and complaint submitted did not contain the factual statements required under 7 GCA § 14106, and no due diligence was exercised prior to the request for substituted service. Further, because the Defendant is a resident of the Republic of the Philippines, the Court finds that the complaint fails to show that the Court's exercise of jurisdiction over either the Defendant, or the *res* of the suit is proper in this case.

1) Foreign Service Requirements

A court must have jurisdiction over a defendant's person, his or her property, or the *res* which is the subject of the suit; further, the defendant must be amenable to and must receive service of process. These are the concepts that embody jurisdiction and service as required for due process of law. A court may not enter a valid personal judgment in the absence of the proper exercise of personal jurisdiction after proper service. Pennoyer v. Neff, 95 U.S. 714, 716 (1877)("said judgment is *in personam*, and appears to have been given without the appearance of the defendant in the action, or personal service of the summons upon him, and while he was a non-resident of the State, and is, therefore, void"); New York Life Insurance Co. v. Dunlevy, 241 U.S. 518, 522–23 (1916); Hansberry v. Lee, 311 U.S. 32, 40 (1940)("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation . . .to which he has not been made a party by service of process.").

As a prerequisite to a court's exercise of personal jurisdiction over a defendant (or jurisdiction over the *res* of the suit), the procedural requirement of service of summons must be satisfied. "[S]ervice of summons is the procedure by which a court having venue and

jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444–45 (1946); *see also* Robertson v. Railroad Labor Bd., 268 U.S. 619, 622–23 (1925).

Prior to 1993, three conditions needed to be satisfied before a court could exercise personal jurisdiction over a non-resident defendant; 1) a constitutionally sufficient relationship must exist between the defendant and the forum; 2) a basis for the defendant's amenability to service of summons must exist; and 3) the procedural requirement of service of summons must have been satisfied by notice to the defendant. Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 103–104, and n.6 (1987).

In 1987, in Omni Capital International v. Rudolf Wolff & Company, Ltd., the Supreme Court held that international service on a foreign defendant under the Commodities Exchange Act, which was silent on service in a foreign country at the time, was ineffective under former Rule 4(h), due to lack of amenability to service. The Court held:

> [B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant. Thus, under Rule 4(e), a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal jurisdiction.

Id. at 104–105.

"Amenability," therefore, means the existence of an explicit federal provision for international service or the existence of a state long-arm statute which authorizes such service. *See* Id.; and Mwani v. bin Laden, 417 F.3d 1, 8–9 (D.C. Cir. 2005).

However, "amenability" to service, even for foreign residents, has been substantively eliminated as an issue in cases under the Federal Rules of Civil Procedure, because in 1993, the Advisory Committee on Civil Rules replaced the former Federal Rule Rule 4(i) with what is now Rule 4(f). Subdivision (f) of Rule 4 is a comprehensive provision for service of a summons and complaint on individuals residing in a foreign country. The history of the rule, the Practice

Notes and the 1993 Advisory Committee Notes indicate that the new Rule 4(f) was drafted in response to the United States Supreme Court's decision in Omni Capital International, such that its enactment would nullify Omni's amenability requirement that there be explicit authorization by state or federal law for service outside the United States. According to the Note of the Advisory Committee: "[g]iven the substantial increase in the number of international transactions and events that are the subject of litigation in federal courts, it is appropriate to infer a general legislative authority to effect service on defendants in a foreign country." Advisory Committee on Civil Rules, Note to Subdivision (f) (1993). The texts of Rule 4(f) and (k) facilitate the use of state long-arm statutes to assert jurisdiction over defendants who cannot be served under state law, but who can be constitutionally subjected to the jurisdiction of a particular court through minimum contacts or the physical location of subject property, by legislatively authorizing service on those foreign resident individuals.

Because the Guam Rules of Civil Procedure are directly derived from the 2003 Federal Rules of Civil Procedure, federal cases interpreting the rules constitute highly persuasive authority in Guam. People v. Diaz, 2007 Guam 3 ¶ 14, n.4. Therefore, since the 1993 amendment to the Federal Rules of Procedure and Guam's adoption of these amended rules, including Rule 4(f), in order to establish that the Superior Court of Guam has jurisdiction over a particular defendant the Plaintiff must show through its pleadings or other evidence: 1) that service of process has properly been effected; and 2) that there is a constitutionally valid basis for the exercise of personal jurisdiction by the Court.

Any judgment entered against a defendant who fails to appear cannot be enforced if the court has never established jurisdiction over the defendant through proper service. Bixler v. Foster, 596 F.3d 751, 761–62 (10th Cir. 2010). More significantly, a default judgment obtained against a resident of a foreign nation who is not properly served under Rule 4(f) is void for lack of personal jurisdiction and must be vacated. Shenouda v. Mehanna, 203 F.R.D. 166, 171–72 (D. N.J. 2001). The Supreme Court of Guam has adopted these concepts with regard to default judgments in Guam, stating: "[w]hen it is found that there has been defective service of process,

the judgment is void . . . .'" Pineda v. Pineda, 2005 Guam 10 ¶ 19 (quoting In re Cossio, 163 B.R. 150, 154 (B.A.P. 9th Cir. 1994) (citation omitted)).

A court has an affirmative duty to *sua sponte* examine its jurisdiction over the parties when judgment is sought against a party who has failed to plead, appear, or otherwise defend against the action, to ensure that it does not enter a void judgment. System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001); *accord* Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005); Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir.1997); *see also* Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213–14 (2d Cir. 2010); and In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). A failure to serve process will lead to a dismissal of the action; however, the court should not resolve the question without first giving the plaintiff an adequate opportunity to assert facts establishing the court's jurisdiction over the defendant. In re Tuli, 172 F.3d 707, 713 (9th Cir. 1999). The plaintiff bears the initial burden of establishing jurisdiction, but the court "ordinarily demands only a prima facie showing of jurisdiction by the plaintiff[ ]." Mwani v. bin Laden, 417 F.3d 1, 6–7 (D.C. Cir. 2005).

The Plaintiff's verified application is deficient in substantial respects regarding this *prima facie* showing that proper personal service will be effected. Rule 4(e) of the Guam Rules of Civil Procedure requires that *if* a person against whom an action is filed is a resident of Guam or any other jurisdiction of the United States, they must be served either: (1) under the laws of Guam; (2) "as prescribed by the law of the place where the person is served;" or (3) in person, or at his residence by leaving it with a household member of suitable age, or by serving the person's agent. GRCP Rule 4(e)(2012). However, if the Defendant is not a resident of Guam or any jurisdiction of the United States, then personal service must be made under GRCP Rule 4(f), as the legislatively authorized method of service on residents of sovereign foreign nations, and may no longer be made "in any manner prescribed or authorized by the laws of Guam," as permitted under GRCP Rule 4(e)(1), but instead must be made in conformity with GRCP Rule 4(f).

The Plaintiff's verified Complaint in DM0708-12 states: "[d]ue to the parties residing in Guam and the Philippines, Angelito requests that the six month waiting period under 19 GCA § 8322 be waived, and that final judgment enter without delay." Tolentino v. Tolentino, Domestic Case No. DM0708-12, Compl., p. 2, ¶ 7 (filed October 17, 2012). This language indicates that the Defendant resides in the Philippines, as it is alleged that the Plaintiff is currently a resident of Guam. The verified application is more explicit, declaring outright that "Defendant is a citizen and resident of the Republic of the Philippines." Id., Ver. App. For Service by Publication and Mail (GRCP Rule 4(o)), p. 1, ¶ 1 (filed October 17, 2012). The evidence shows that Defendant Rosemarie Gonzales Tolentino is a foreign resident of the Philippines.

In order for the Court to properly enter any judgment, it has to appear from either the declaration of service or other verified document that service of process will be properly effected on the Defendant against whom judgment will be entered. In this case, there are no allegations which would lead the Court to believe that the Defendant is subject to service of process under the laws of Guam. In fact, the verified statements of the complaint and the verified application, prove that Defendant Rosemarie Gonzales Tolentino is a resident of a foreign country, and is therefore, not subject to service of process under Guam law. Defendant Rosemarie Gonzales Tolentino is a resident and citizen of the Philippines.

Rule 4(e)(1), allowing for service of process through publication under statute through Rule 4(o), is only applicable where the defendant resides in a jurisdiction of the United States. Elisan Entertainment, Inc. v. Suazo, 206 F.R.D. 335, 335–38 (D. Puerto Rico 2002). "[W]hile it is true that the current Fed.R.Civ.P. 4(e)(1) permits the use of state law to perform extraterritorial service, by its own terms, its usage is strictly limited to service upon individuals within 'any judicial district of the United States.'" Id., at 336. Service of process on foreign residents "must be made pursuant to Fed.R.Civ.P. 4(f)." Id. There is a special procedure for serving residents of foreign nations under Rule 4(f):

[W]hen a party seeks to serve process on an individual residing in a foreign country, the Court must follow this two (2) prong test: first it must ascertain whether the foreign country in which the party to be served is residing has entered into any international agreement with the United States, such as the Hauge(sic)

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of November 15, 1965, which is specifically mentioned by Rule 4(f)(1). If there is no applicable internationally agreement which might provide a reasonable means of service, then the party serving process must do so using one of the several methods provided by subsection (f)(2).

Id.

Because Defendant Rosemarie Gonzales Tolentino is not, nor has ever been a resident of Guam or any United States jurisdiction, and is, in fact, a resident of the Philippines, as declared by the Plaintiff: 1) service under Rules 4(e)(1) and (o) is not applicable; and 2) service under GRCP Rule 4(f) must be effected as a precursor to the exercise of personal jurisdiction over the Defendant and entry of judgment, as no evidence that a waiver has been obtained from the Defendant has been provided to the Court by the Plaintiff. Id.

The Philippines is not a party to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, and it is not apparent that it is a party to any treaties or contracts regarding service with the United States. GRCP Rule 4(f)(1) is not applicable in such an instance. Therefore, the Plaintiff will be required to comply with other subsections of Rule 4(f). There are no exceptions to the foreign service requirements of Rule 4(f), and the Court may not apply Guam law to override international law. *See, e.g.*, Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988) (compliance with the service requirements of the Hague Convention under Rule 4(f) is mandatory when serving a foreign defendant in a signatory country); and Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 534 n. 15, (1987).

Perhaps most importantly, because the Defendant is a resident of the Philippines, Rule 4(l) regarding proof of service, contains a special provision for proving service in a foreign country, specifically requiring that if process is served in a foreign country by any of the methods described in Rule 4(f)(2) or Rule 4(f)(3), the proof of service must include a receipt signed by the addressee or other tangible evidence of delivery to the addressee showing compliance with the law of the receiving country which is satisfactory to the court. GRCP Rule 4(l) (2012) ("Proof of service in a place not within Guam or any other jurisdiction of the United

States, its territories, commonwealths, or possessions shall, . . .if effected under paragraph (2) or (3) thereof, include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court."). For the obvious reason that a foreign Defendant will usually not be present in the forum jurisdiction, this requirement is intended to assure the Court that the process was properly served in the foreign country. Only upon the provision of this proof of service may the Court be assured that it may properly exercise personal jurisdiction over the foreign Defendant. The method of service proposed and requested by the Plaintiff requires no return of a signed receipt or other tangible proof of service to the Defendant as required by Rule 4(l), but instead allows for alternative proof of service through affidavit that copies of the summons and complaint were left at the United States Post Office. This is not sufficient to satisfy Rules 4(f) and (l).

In Saysavanh v. Saysavanh, 145 P.3d 1166 (Utah App. 2006), Husband filed an amended petition for divorce in Utah seeking dissolution of marriage from Wife, who lived in Mexico. Id. at 1167. Approximately one week later, Husband filed a motion for alternative service pursuant to Rule 4(d)(3)(B)(iii) of the Utah Rules of Civil Procedure. Id. Like the Guam Rules of Civil Procedure, the Utah Rules of Civil Procedure were directly derived from the Federal Rules of Civil Procedure. The trial court granted the motion for alternative/substituted service, and the next month, the court clerk mailed an Amended Verified Petition for Divorce, a summons, a Motion for Order to Show Cause, and an Order to Show Cause to Wife in Mexico, requesting a return receipt. Id. at 1167–68. The receipt was later returned to the court clerk unsigned and without any other indication that the documents had been delivered to Wife. Id. Wife did not appear at the hearing to show cause. Id. Despite Wife's absence, the trial court granted Husband's motion for order to show cause, and subsequently entered a default decree of divorce. Id. Upon becoming aware of the default divorce decree, Wife immediately obtained counsel in Utah and filed a motion to set aside the default decree of divorce pursuant to Rule 60(b) on the basis of lack of personal jurisdiction. Id. The trial court denied the motion to set aside the default decree, finding that Husband "made every effort possible to apprise [Wife] of

the divorce proceedings, including strict compliance with Rule 4(d)(3)(B)(iii) of the Utah Rules of Civil Procedure." Id.

The Court of Appeals of Utah reversed the trial court's decision, finding that where the rules set forth a particular manner of effecting international service, such as the Hague Service Convention, that manner of service is controlling and strict compliance is required, stating:

> Rule 4 of the Utah Rules of Civil Procedure governs service of process, and subsection 4(d)(3) specifically governs service of process in a foreign country. See Utah R. Civ. P. 4(d)(3). In order to determine which part of subsection 4(d)(3) is applicable, we first assess whether there is an internationally agreed means of service in Mexico, "such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Utah R. Civ. P. 4(d)(3)(A). If there exists an internationally agreed means of service between the countries, rule 4(d)(3)(A) is applicable. See id. If there is no internationally agreed means of service, rule 4(d)(3)(B) is applicable. See Utah R. Civ. P 4(d)(3)(B).

Id.

Finding that Husband had served Wife under Rule 4(d)(3)(B), instead of Rule 4(d)(3)(A) and the Hague Service Convention, as the internationally agreed means of service between Mexico and the United States, the appellate court held that the default decree was improperly entered against Wife: "Husband has failed to properly serve Wife according to rule 4(d) of the Utah Rules of Civil Procedure and the Hague Service Convention. As a result, service of process was not properly effectuated and the trial court lacks personal jurisdiction. We therefore reverse the trial court's denial of Wife's motion to set aside the default decree of divorce." Id. at 1169.

Similarly, in Ward v. Ludwig, 778 N.E.2d 650 (Ohio Ct. App. 2002), following the entry of a default decree of divorce, Wife, a German citizen, entered an appearance for limited purpose of contesting the trial court's jurisdiction and petitioning to vacate the judgment. Id. at 651. The trial court denied the petition. Id. The Ohio Court of Appeals overturned the trial court, holding that the decree of divorce was void for lack of service. Id. at 652–53. The appellate court found that Husband, who filed the action while Wife was living in Germany, was required to comply with the provisions of the Hague Service Convention, which was

adopted by both Germany and the United States; and even though Wife had received actual notice of the complaint and related papers, it was error for the trial court to allow alternative service by registered mail. Id.

The point of these cases is clear. In order for the trial court to enter a valid and binding judgment of divorce against a resident of a foreign nation, service must be validly made in that country under the proper rule of procedure, and any applicable agreed international service provisions; where there is no such provision, Rule 4(f)(2) requires that service must be effected under the laws of the country in which service will occur. Service which does not comply with a specifically applicable foreign service provision is invalid, and no judgment may be entered thereon, even if personal service which would be valid within the United States has been effected under a different rule. Between sovereign nations, the laws of the sovereign are controlling with regards to its own citizens.

In this case, the Plaintiff filed his request for substituted service on the same day as he filed the complaint. It is apparent that the Plaintiff has not "made every effort possible to apprise [Wife] of the divorce proceedings," Saysavanh, 145 P.3d at 1167–68, as he has not attempted personal service or any service at all under the laws of the Republic of the Philippines. Because the method of service proposed by the Plaintiff does not establish that it will comply with the laws of the Philippines, at this time, the Court must DENY the issuance of substituted service under 7 GCA § 14106 through Rule 4(o), as requested by the Plaintiff.

2) Requirements of Substituted Service and Deficiency of Underlying Declaration in Support of Order Allowing Service by Publication

Even if the Defendant was a resident of a United States jurisdiction, and therefore, could be subject to any service allowed under Guam law or U.S. law under GRCP Rule 4(e)(1), the current GRCP Rule 4 only allows for service through publication and mailing as permitted by statute or court order, in accordance with due process. GRCP Rule 4(o)(2012). 7 GCA § 14106 is the controlling statute, and specifically allows for service by publication and mailing instead of personal service under GRCP Rule 4(e)(1) or (2), only when an application is made to the Court upon a verified affidavit (or declaration, see 6 GCA § 4308) swearing either that the

person "has departed from Guam . . .or conceals himself to avoid the service of summons" and that "a cause of action exists against the defendant." 7 GCA § 14106 (2012). It states in relevant part:

> (a) *Where the person on whom service is to be made has departed from Guam*, and cannot, after due diligence, be found in Guam, *or conceals himself to avoid the service of summons* . . . and the fact appears by affidavit to the satisfaction of the court, or a judge thereof, *and it also appears by such affidavit, or by the verified complaint on file, that a cause of action exists against the defendant in respect to whom the service is to be made* . . . such court or judge may make an order that the service be made by the publication of the summons and by mailing the complaint and summons. (b) Service by mail shall be by any kind of U.S. Postal Service delivery that provides for written proof of mailing, written proof of delivery and restricted delivery to the addressee only.

7 GCA § 14106 (emphases added).

The Plaintiff apparently requests that this order for service by publication issue simply because the Defendant is not a resident of Guam. However, service by publication and mailing under 7 GCA §14106, in lieu of personal service under GRCP Rule 4, constitutes substituted service, and has specific factual requirements which must be declared to the Court.

Rule 4(e) anticipates that parties who reside in other United States jurisdictions may need to be served from time to time, and provides a method for such personal service, stating: "service upon an individual . . . may be effected . . . in any other jurisdiction of the United States, its territories, commonwealths, and possessions: (1) . . . as prescribed by the law of the place where the person is served; or (2) by delivering a copy of the summons and of the complaint to the individual personally . . . ." GRCP Rule 4(e).

Personal delivery of service is the gold standard of available service methods, and is "always adequate in any type of proceeding." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). Due process requires that service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" because "process which is a mere gesture is not process." Id. at 314–15.

For unknown or missing persons, service through ineffectual or even "futile" methods such as publication may be sufficient. Id. at 317. But, "[a]s to known present [parties] of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties." Id. at 318. Accordingly, the United States Supreme Court found that a state statute which authorized service of process through publication was insufficient with regards to parties whose addresses and residences were known, stating:

> Publication may theoretically be available for all the world to see, but it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property interests. We have before indicated in reference to notice by publication that, 'Great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact.'

Id. at 320 (quoting McDonald v. Mabee, 243 U.S. 90, 91 (1917)).

Following this reasoning, other courts have held that a party must attempt personal service or other service designed to reasonably provide notice, prior to attempting substituted service. *See* Goetz v. Synthesys Technologies, Inc., 415 F.3d 481, 485–86 (5th Cir. 2005) ("Nail and mail" substituted service, i.e., service through posting and mailing, as authorized under state statute, was improper for lack of due diligence when the plaintiff failed to make even a single attempt at personal service at a known residence belonging to the defendant); Burchett v. City of Newport Beach, 33 Cal.App.4th 1472, 1477 (Cal. App. 4 Dist. 1995)(failure to effect or even attempt personal service prior to attempting substituted service was improper, and deprived court of personal jurisdiction over defendants); Sangdahl v. Litton, 69 F.R.D. 641 (S.D.N.Y. 1976); Moreland v. Dorsey Thornton and Associates LLC, No. 10–CV–867, 2010 WL 5463333, **2–3 (E.D. Wis. December 29, 2010) (court allowed substituted service by publication and ordinary mail, but only after the Plaintiff diligently made several attempts at personal service, and exhausted other methods of service reasonably calculated to give notice).

In Sangdahl, the District Court would not approve substituted service on a non-resident defendant where the defendant could readily have been served in the state of his residence under the New York long-arm statute. The court found, "any order permitting substituted service should be made only after plaintiff sustains the 'heavy burden' of showing that an exhaustive search has been made for defendant and all other permissible methods of service are impracticable." Id. at 644–45.

7 GCA § 14106 was adopted from the California Code of Civil Procedure, Title 5, Jurisdiction and Service of Process, Chapter 3, Summons, §§ 412.10, et. seq. Particularly, California now permits service by publication under CCCP § 415.50, which is substantively similar to 7 GCA § 14106. Under these statutes regarding service of summons, in California, "[a]ll means other than personal delivery to the defendant are considered substituted service, and personal service must have been diligently attempted before substituted service may be performed." Bonita Packing Co. v. O'Sullivan, 165 F.R.D. 610, 613 (C.D. Ca. 1995). Where a Guam statute is derived from a California statute, California cases interpreting the statute are highly persuasive, and the Superior Court of Guam must follow California precedent unless there is a compelling reason to deviate from the California law. Fajardo v. Liberty House Guam, 2000 Guam 4 ¶ 17; and Cruz v. Cruz, 2005 Guam 3 ¶ 9. Accordingly, 7 GCA § 14106 provides a method of substituted service and requires a showing that personal service is unavailing.

Under the specific language of 7 GCA § 14106, publication and mailing are to be utilized only when, "after due diligence" it is apparent that the party to be served "has departed Guam" or "conceals himself to avoid service of the summons, . . ." 7 GCA § 14106 (2012). Like the statute at issue in Goetz, "under the plain text of the statute, a plaintiff is required to exercise 'due diligence' to complete service . . . ." Goetz, 415 F.3d at 483; see also Bland v. Fairfax County, Va., 275 F.R.D. 466, 470 (E.D. Va. 2011) ("This is an example that where the rules favored personal service to the exclusion of other methods, the rules say so."); and Moreland, at *3 (citing Wis. Stat. 801.11(5)(b)) ("if with reasonable diligence a defendant cannot be served by the means set forth above then a summons may be served . . . by publication and mailing."). It is clear from the language of 7 GCA § 14106 that other methods of service are preferred to

service by publication and mailing, and a party must exercise "due diligence" prior to seeking an order permitting service under this statute.

Interpreting the former California Code of Civil Procedure § 412, from which 7 GCA § 14106 is directly derived, the Supreme Court of California has interpreted "due diligence" to mean actual, documented efforts to locate and personally serve a defendant. Kahn v. Matthai, 115 Cal. 689, 692, 47 Pac. 698, 699 (Cal. 1897); *see also* Chapman v. Moore, 151 Cal. 509, 513–14, 91 P. 324, 325–26 (Cal. 1907); Rue v. Quinn, 137 Cal. 651, 655–57, 66 P. 216, 217 (Cal. 1902); and Forbes v. Hyde, 31 Cal. 342, 350 (Cal. 1866). In Kahn, the court found that the first step in showing "diligence" in requesting service by publication under the statute is the filing of a prescribed affidavit showing in detail the probative facts indicating a thorough search to locate the defendant, including the dates of any attempts to serve the defendant by another method of service; thus, an affidavit which did not include this information was "fatally defective in failing to show with accuracy the efforts made to serve defendant with summons." Id. In accordance with the language of the statute, service by publication and mailing under 7 GCA § 14106 is only available as an option of last resort, when a defendant has fled Guam or is hiding somewhere to avoid service, and the plaintiff has exercised due diligence, but has been unable to locate and personally serve the defendant due to the defendant's evasion.

In accordance with the due process clause, and cases interpreting the former CCCP § 412, which was identical to 7 GCA § 14106, the Court finds that it is improper for a party to make a request for service by publication and mailing on a party whose residence or domicile is known, prior to exercising due diligence to serve the party by other means reasonably calculated to give actual notice, such as personal service. In this case, from the allegations of the verified complaint and the verified application, it is apparent that the Plaintiff is fully aware of the current location and residence of the Defendant. No attempt at personal service at the Defendant's known address was ever made in this case, even though such service should be practicable and available. Goetz, 415 F.3d at 485 ("due diligence is absent where the plaintiffs have failed to make any attempts to perform service at known addresses."); and Trackman v. Kenney, 187 Cal.App.4th 175, 185 (Cal.App.3.Dist. 2010) ("Ordinarily, . . . two or three

attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made."). Thus, even if the Court found that the Defendant was not a resident of a foreign country who was subject to Rule 4(f)(2) or (3), and was instead subject to Rule 4(e), the Court would find that the Plaintiff has improperly made a request for service by publication and mailing before exercising due diligence, and the Court would be required to DENY any request by the Plaintiff for an order permitting service under 7 GCA § 14106 and Rule 4(o), made prior to any attempt at personal service.

Finally, even if the Court found that substituted service could be used to serve the Defendant in this case, the Plaintiff has not complied with the specific requirements of the substituted service provisions. 7 GCA § 14106 requires an "affidavit" or "verified complaint" swearing or declaring under penalty of perjury, not only that the Defendant cannot be found in Guam, but either: 1) both that the Defendant "has departed from Guam" AND "cannot . . . be found in Guam;" or 2) that the Defendant has concealed himself/herself "to avoid the service of summons . . . ." 7 GCA § 14106. Both of these options are carefully worded to indicate to the Court that the Defendant was formerly present in Guam and/or is now attempting to avoid service, not merely that a defendant is not present in Guam.

Regarding the Defendant's "depart[ure]" from Guam, neither the verified complaint or verified application of the Plaintiff contain a statement that the Defendant was a former resident of Guam. No factual allegations that the Defendant has ever resided in Guam and thus, has ever "departed from Guam" are present. Nor are there any allegations that the Defendant has ever been to Guam, or would ever have been subject to service in Guam. The Court finds that the statements of the verified complaint and application, without any accompanying information regarding the Defendant's previous presence in and flight from Guam, or amenability to service in Guam, are inadequate to support the issuance of an order for publication and mailing under 7 GCA § 14106.

Regarding the Defendant's "concealment" from service, Plaintiff's verified complaint and application are also silent. In Kahn v. Matthai, interpreting the former CCCP § 412, direct forerunner to 7 GCA § 14106, service by publication was originally permitted by the trial court

on the ground that the defendant was seeking to conceal herself to avoid the service of the summons, however, on appeal, the judgment was overturned by the Supreme Court of California, on the basis that the affidavit submitted did not contain facts which had any actual tendency to show that the defendant had departed from California or was concealing herself from service, and thus, the affidavit was insufficient. Id. at 692–93.

Service by publication and mailing is not to be lightly granted, nor lightly treated under 7 GCA § 14106, as it is permitted only in the alternative that personal service pursuant to GRCP Rule 4(e) cannot be made because of the Defendant's actions. GRCP Rule 4(e)(1) and (2), and Burchett, 33 Cal.App.4th at 1477. The affidavit (or declaration) must be in proper form in order for the Court to grant the order for publication and acquire jurisdiction over the defendant, and must allege that the Defendant was formerly present in Guam and fled, or that she is concealing herself to avoid service. Forbes, *supra*, at 350. "If either of these facts does not appear by affidavit, the court or judge has no jurisdiction to make the order, and an order made thereon will be insufficient to sustain a judgment based upon such service." Quinn, *supra*, at 217.

The Plaintiff's verified application fails to allege the minimum requirements for the issuance of an order for service by publication and mailing. The verified application neither declares that the Defendant has ever resided in Guam, nor that the Defendant has ever concealed herself to avoid service under GRCP Rule 4(e). A statement to the effect that a person is not present in Guam, without more, does not satisfy the requirements of 7 GCA § 14106. Plaintiff's complaint and verified application further fail to allege that personal service pursuant to GRCP Rule 4(e)(1) or (2) was ever attempted or was not possible in this case, as required to satisfy the statute's requirement of due diligence.

Accordingly, the verified complaint and application fail to establish the facts required under 7 GCA 14106, and the Plaintiff's request for an Order for Publication would be DENIED on this basis as well.

3) It Appears that No Valid Cause of Action Exists Against the Defendant for the Exercise of Jurisdiction, Either *In Personam* or *In Rem*

The Court may not exercise jurisdiction over a non-resident, except as permitted by the Organic Act and the United States Constitution. 7 GCA §§ 14109 and 14110(4) (2012). Both 7 GCA §§ 14109 and 14110(4) were adopted directly from California's long-arm statute, codified as California Code of Civil Procedure § 410.10. Moreover, even in a dissolution action, service of summons will not issue, or should be quashed, as against a resident of a foreign country, if the Plaintiff does not demonstrate that the foreign resident defendant has a sufficient a connection to the forum in which the Plaintiff seeks the summons. In re Marriage of Malak, 182 Cal.App.3d 1018, 1024 (Cal. App. 3d Dist. 1986).

The Court notes that the Plaintiff has asked the Court to "[a]llocat[e] the separate property and debt as requested above." Tolentino, Ver. Compl. for Divorce, p. 2, Prayer 2 (filed October 17, 2012). The rule set forth by the United States Supreme Court is that a divorce court in one jurisdiction does not have the power directly to affect, by means of a decree, the title to real or personal property situated outside of that jurisdiction. Fall v. Eastin, 215 U.S. 1, 11 (1909). "[W]hen the subject matter of a suit in a court of equity is within another state or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant, and not upon the subject-matter, . . . ." Id. The Plaintiff fails to cite to any authority permitting this Court to adjudicate the issues presented. Under the holding in Eastin, a divorce court in one state may indirectly affect property in an extra-territorial location, but only by means of an *in personam* decree operating upon a party over whom the court has personal jurisdiction. Id.

> [The full faith and credit clause] does not extend the jurisdiction of the courts of one state to property situated in another, but only makes the judgment rendered conclusive on the merits of the claim or subject-matter of the suit. 'It does not carry with it into another state the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there; and can only be executed in the latter as its laws may permit.'

Id., at 12 (quoting M'Elmoyle v. Cohen, 13 Pet. 312, 10 L. ed. 177.)

7 GCA § 14109, Guam's long-arm statute, was adopted directly from California's long-arm statute, codified as California Code of Civil Procedure § 410.10. The Supreme Court of

Guam has specifically adopted the minimum contacts test regarding personal jurisdiction over non-resident defendants in a divorce action in Guam for the purposes of dividing marital property under 7 GCA § 14109; finding that the due process clause requires "a nonresident defendant to have minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Banes v. Superior Court of Guam, 2012 Guam 11 ¶ 28 (quoting PCI Commc'ns, Inc. v. GST Pacwest Telecom Haw., Inc., 1999 Guam 17 ¶ 17)(internal citations omitted)); see also Mariano v. Surla, 2010 Guam 2 ¶ 23. "Only if minimum contacts exist will the nonresident defendant be subject to general (i.e., unlimited) or specific (i.e., limited) jurisdiction." Id. Accordingly, Guam has chosen its method of exercising personal jurisdiction over non-resident defendants, even in a divorce action, with regards to the division of property, through its adoption of California's long-arm statute; and this requires minimum contacts with Guam.

Specifically, in In re Marriage of Malak, 182 Cal.App.3d 1018 (Cal. App. 3d Dist. 1986), the California Court of Appeals determined whether California could exercise personal jurisdiction under its long-arm statute over the husband, who was a foreign non-resident defendant in a divorce action. The court found that it was required to determine whether due process requirements would be met in an assertion of jurisdiction. Id. at 1023. The court found that the amended petition for dissolution of marriage, "summons, and a motion for orders pended lite were duly served on husband." Id. at 1022. However, the court found that it was required to find minimum contacts to ensure that "the imposition of jurisdiction should be both constitutionally justified and 'fair.'" Id. at 1024. On this basis, the court quashed the service on the foreign defendant for all purposes of the action, except for the issue of child custody. Id.

Under the reasoning of this case, it is apparent that California courts refuse to exercise long-arm jurisdiction over residents of foreign countries, for the purposes of divorce actions, unless minimum contacts are established. The minimum contacts requirement of In re Marriage of Malak for non-resident defendants who are residents of foreign nations, coupled with the minimum contacts requirement for non-resident defendants stated in Banes, clearly direct that

this Court must find minimum contacts in order to find personal jurisdiction and divide or allocate any marital assets in this case.

Currently, there are no allegations that give rise to the exercise of personal jurisdiction of this Court over the Defendant, and accordingly, the Court cannot exercise jurisdiction, even indirectly, over any alleged real or personal property of the Plaintiff and Defendant in the Philippines.

More importantly, even if the Plaintiff did not seek any division of marital assets and only sought the legal status of a dissolution of the marriage, i.e, jurisdiction over the *res* of the marriage, the Court fails to see how it could possibly exercise *in rem* subject matter jurisdiction over this divorce action which appears to involve two Philippine citizens who were previously married in the Philippines and resided together in the Philippines. *See e.g.,* Van Dorn v. Romillo, Jr., 223 Phil. 357, 362 (1985)(owing to the nationality principle embodied in Article 15 of the Philippine Civil Code, Philippine nationals are subject to the policy against divorces, the same being considered contrary to the Philippine concept of public policy and morality; only aliens may obtain divorces abroad, provided they are valid according to their national law); and Garcia v. Recio, 418 Phil. 723, 723-735 (2001); *see also e.g.,* the Uniform Foreign Country Money–Judgments Recognition Act, §§ 1(a), 4(a)(2), 4(a)(3), and 11, as approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, in 1962.

Under Article 15 of the Philippine Civil Code and cases from the Supreme Court of the Republic of the Philippines interpreting this article, such as Van Dorn v. Romillo, Jr. and Garcia v. Recio, it is apparent that any judgment of divorce rendered between two citizens of the Philippines is a legal nullity, as the Philippines does not recognize foreign judgments of divorce unless one of the parties is a citizen of a different country. Van Dorn, 223 Phil. 357, 362 (1985); and Garcia, 418 Phil. 723, 723-735 (2001); *see also* Quita v. Court of Appeals, 300 SCRA 406 (1998)(once proven that respondent was no longer a Filipina citizen, she could validly obtain foreign divorce decree which would be recognized in the Philippines). Accordingly, from the allegations of the complaint, the Court is not satisfied that any judgment

entered in this case will not be ineffective. The Court finds no explicable reason it should waste judicial resources entering a judgment of divorce which is automatically void or unenforceable against the Defendant. More importantly, the Court finds no benefit in interfering with the ability of a sovereign nation to dictate its own laws and govern the conduct of its own citizens. Thus, the Plaintiff must convince the Court that its exercise of *in rem* jurisdiction over this cause of action for divorce is not an exercise in futility, by pleading sufficient facts in an amended complaint, to wit, that he is a citizen of a country other than the Philippines, and that a judgment of divorce will not conflict with the laws of the country of his citizenship.

### 4) Notions of Fair Play and the Interests of Justice

Finally, the Court acknowledges that the first sentence of 19 GCA § 8318(a) seems to indicate that the Court is empowered to grant a decree of divorce whenever one party has established the minimum residency requirements of Guam. However, the language of this statute is *permissive*. The sentence states: "[a] divorce or dissolution of marriage *may* be granted if one (1) of the parties has been a resident of Guam for at least ninety (90) days immediately preceding the filing of a complaint for divorce, or dissolution of marriage." 19 GCA § 8318(a) (emphasis added). Under the statutory construction provisions of the Guam Code, the word "[s]hall is mandatory and may is permissive." 1 GCA § 724 (9) (2012). The Court is not *required* to grant a divorce merely because one party has met the residency requirements of this first statute. The Court may do so, in its discretion, however, the Plaintiff must meet all of the requirements of due process in order for the Court to enter a valid judgment. Further, it should be apparent to the Court that the judgment of dissolution will be enforceable. The Court has an interest in assuring that its judgments are validly entered, and that the interests of justice are being served in any action before it. This idea is re-emphasized in 19 GCA § 8320, which states in relevant portion: "[i]n the event of *uncontested, consent or default divorce actions*, the court *may* grant a divorce based upon the verified complaint of the Plaintiff or Petitioner *if it appears to be in the interests of justice.*" 19 GCA § 8320 (emphases added).

Most significantly, for the Court's consideration, the first sentence of 19 GCA § 8318(a) cannot be read in isolation. When read in conjunction with 19 GCA §§ 8318(b) and 8319, it

appears that a divorce should be granted when either both parties are residents or former residents, or only one party is a resident of Guam AND the other party consents and submits themselves to the jurisdiction of the Superior Court, or where one party has established residency and validly served the complaint and summons upon the other party. When considered in light of the mandates of the United States Constitution and the Organic Act of Guam that the Superior Court of Guam cannot exercise jurisdiction over a non-resident defendant in the absence of valid service of process, it is apparent that the Superior Court is required to assure itself of the validity of its judgments in entertaining motions for substituted service and other acts in an action for divorce.

In this case, as plead, the Court finds none of the hallmarks of the notions of fair play, and finds nothing to show that the grant of this divorce would be in the interests of justice. This appears to be a divorce by ambush against a non-resident Defendant with no ties to Guam. The method of notice proposed by the Plaintiff is not reasonably calculated to give actual notice to the Defendant, as required by the due process clause of the United States Constitution and the Organic Act of Guam under Mullane, 339 U.S. at 314–15, in that: 1) the Defendant is a resident of a foreign country, and service as required under GRCP Rule 4(f) has never been attempted in this case; and 2) even if the Defendant was a resident of a United States jurisdiction due diligence has not been satisfied as no personal service has ever been attempted prior to this request for substituted service, and "publication in the Marianas Variety, for a period of one (1) day," Tolentino, Proposed Order Re: Application for Service by Publication and Mail, p. 1, ¶ 2 (received October 17, 2012), will doubtfully reach the Defendant because she does not reside in Guam, and has no apparent contacts with Guam. *See* Pineda v. Pineda, 2005 Guam 10 ¶ 14 (Regarding service by publication, the Supreme Court of Guam is "mindful that: [c]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.") (quoting Mullane, 339 U.S. at 315)(internal citations omitted).

Because the Defendant is a resident of a foreign country, service can only be made in accordance with GRCP Rule 4(f)(2) or (3), under the laws of the Philippines, and Plaintiff's request for service through 7 GCA § 14106 and Rule 4(o) is inapplicable. Lastly, because the Court is aware that the Defendant is a citizen of the Philippines, and that the Philippines does not recognize any judgments of divorce between two of its own citizens, the Plaintiff has failed to plead his own citizenship so as to apprise the Court as to the futility of the issuance of any judgment in this matter and to show that the "interests of justice" would be served by the exercise of jurisdiction over this divorce case. This Court has no interest in interfering with the ability of any sovereign nation to govern its own citizens. As such, the Plaintiff has failed to convince the Court that justice will be served by any attempt to exercise jurisdiction over the matter, and the Complaint for Divorce is DISMISSED WITH LEAVE TO AMEND.

## CONCLUSION

Based upon its review of the complaint, as part of the analysis of the Plaintiff's request for an Order for Service by Publication and Mail, which requires analysis of both proper service and whether there is a cause of action against the Defendant under 7 GCA § 14106, the Court finds that Rule 4(e) and substituted service under 7 GCA § 14106 are inapplicable, as the Defendant is a citizen of the Republic of the Philippines, and the Plaintiff has failed to attempt service as required under Rule 4(f). The Plaintiff further fails to allege any means by which the Court could exercise jurisdiction over this matter in consideration of the efficacy of the Court's judgments and notions of fair play and justice. Therefore, the Plaintiff's application for an order allowing service by publication and mail is DENIED.

Further, even if the Defendant was a resident of a United States jurisdiction, and 7 GCA § 14106 was applicable in lieu of personal service under Rule 4(f), the verified complaint and application fail to show that the Defendant has "depart[ed]" from Guam, or that she has "conceal[ed]" himself to avoid personal service of the complaint as provided under GRCP Rule 4(e)(1) or (2), in order to meet the requirements of 7 GCA § 14106 for publication and mailing in lieu of personal service. Nor has the Plaintiff ever even attempted due diligence through personal service despite his knowledge of the Defendant's current residence. Therefore, the

Plaintiff's application for an order allowing service by publication and mail would be DENIED on this basis as well.

Finally, it appears that any judgment of divorce, even a decree merely setting forth the marital status of the parties as divorced, will not be recognized as valid in the Philippines if both the Plaintiff and Defendant are citizens of the Republic of the Philippines, as Philippine nationals are subject to the Philippines' moral prescription against divorce, and only citizens of other countries are entitled to have valid foreign judgments of divorce recognized in the Philippines. Van Dorn v. Romillo, Jr., 223 Phil. 357, 362 (1985); and Quita v. Court of Appeals, 300 SCRA 406 (1998). Accordingly, although the Plaintiff may have established residence in Guam for the purposes of 19 GCA § 8318, he has not established his own citizenship, whether in the United States, the Republic of the Philippines, or any other country, in order for the Court to determine the futility of his request for divorce, due to the non-recognition of judgments of divorce in the Philippines, where his wife is a resident and citizen.

Consequently, the Verified Complaint for Divorce is DISMISSED without prejudice, with LEAVE TO AMEND within thirty (30) days of the date of this order. The Court hereby ORDERS that any amended complaint shall set forth facts establishing both the Plaintiff's citizenship and the Defendant's citizenship for the purposes of this determination.

**IT IS SO ORDERED** this ___NOV 2 8 2012_____ .



HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

NOV 2 8 2012

Cynthia T. Tiong
Deputy Clerk, Superior Court of Guam